UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SHARON VEACH, | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
| v. | )    No. 1:13-CV-00076-DBH |
| | ) |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) ) |
| | ) |
|     Defendant. | ) |

**REPORT AND RECOMMENDED DECISION**

The Social Security Administration found that Sharon Veach is under a disability but that her abuse of alcohol is a contributing factor material to the disability determination, resulting in a denial of Veach's application for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act. Veach commenced this civil action to obtain judicial review. I recommend that the Court affirm the administrative decision.

**THE ADMINISTRATIVE FINDINGS**

The Commissioner's final decision is the January 27, 2012, decision of the Administrative Law Judge because the Appeals Council "found no reason" to disturb the decision of the ALJ. The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920, but is modified to account for a separate analysis of Veach's condition with and without substance abuse. (ECF No. 9-2, PageID ## 35-51.)

At step 1 of the sequential evaluation process, the ALJ found that Veach met the insured status requirements of Title II through June 30, 2013, and has not engaged in substantial gainful activity since July 1, 2006, the date of alleged onset of disability.

At step 2 the ALJ found that Veach has the following severe physical/mental impairments: depression, anxiety disorder, alcohol dependence, marijuana abuse, carpal tunnel syndrome, status post carpal tunnel release on the left, lumbar degenerative disk disease, status post laminectomy at L5-S1, and asthma.

At step 3 the ALJ found that this combination of impairments meets listings 12.04, 12.06, and 12.09 in the Commissioner's Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P, because of a longstanding history of severe alcohol abuse that results in moderate restrictions in activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, and pace, and three episodes of decompensation, each of extended duration.

The ALJ also found that in the absence of substance abuse, Veach's other impairments would continue to be "severe" for occupational purposes, but would not, singly or in combination, meet or equal a listing. These, according to the ALJ, would result in mild limitations in activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties maintaining concentration, persistence, and pace. The ALJ then proceeded to evaluate what residual functional capacity Veach would most likely have if she stopped her substance abuse. The ALJ found that Veach's other impairments, in combination, would not prevent her from engaging in light exertion on a full-time basis, subject to multiple postural and environmental limitations and subject to a limitation to work involving only simple, repetitive instructions. The ALJ discussed the evidence at some length with respect to each of Veach's impairments and evaluated the experts' assessments of the same.

At step 4 the ALJ found that this degree of limitation precluded Veach from performing her past relevant work, based on testimony supplied by a vocational expert. Based on Veach's

age, education, work experience, the residual functional capacity finding, and the testimony of the vocational expert, the ALJ found at step 5 that Veach would be able to perform occupations existing in significant numbers in the national economy, relying on expert testimony related to three specific occupations. Because she found that Veach would only be disabled based on consideration of substance abuse as a contributing factor, the ALJ denied Veach disability benefits.

## DISCUSSION OF PLAINTIFF'S STATEMENT OF ERRORS

In her statement of errors, Veach argues that the ALJ committed the following errors:

1. The ALJ found that in the absence of substance abuse Veach would still suffer moderate limitations in concentration, persistence, and pace, but did not impose any corresponding limitation in the residual functional capacity finding, just a limitation to simple, unskilled work.

2. The ALJ relied on insubstantial evidence from the vocational expert concerning the number of available jobs.

3. The ALJ did not properly apply the Medical-Vocational Guidelines because she did not make a finding about the erosion of the occupational base or, alternatively, treat Veach as someone of advance age.

(Statement of Errors, ECF No. 11.) At oral argument, Veach abandoned her second argument concerning substantial evidence of job numbers.[1]

---

[1] Counsel did not articulate why he abandoned the argument. However, I suspect it is because one of the occupations identified by the vocational expert was "cashier II." Even if the Occupational Employment Quarterly (OEQ), which the VE relied on for her job numbers, is not specifically calibrated to the Dictionary of Occupational Titles job classifications, it is a tough sell to assert that the cashier II occupation does not exist in significant numbers, especially when the OEQ figure provided by the VE exceeds five thousand jobs regionally and one million jobs nationally. On this evidence, a reasonable person would not question the assertion that cashier II jobs exist in significant numbers, notwithstanding the VE's concession that the numbers she provided are not precise.

A.      **Standard of Review**

The Court must affirm the administrative decision so long as it applies the correct legal standards and is supported by substantial evidence. This is so even if the record contains evidence capable of supporting an alternative outcome. Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

B.      **Discussion**

The ALJ's decision turns on her assessment of what Veach would likely be able to do if she were to abstain from substance abuse. As a matter of law, "alcoholism" and "drug addiction" cannot pave the way to disability benefits. 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935. According to statute: "An individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C), 1382c(a)(3)(J). Prior to passage of the amendment adding this provision, Pub. L. No. 104-121, 110 Stat. 852-56 (1996), the regulatory approach was to find a claimant disabled and refer the claimant for appropriate treatment of drug addiction or alcoholism. 20 C.F.R. §§ 404.1536, 416.936 (1995). That regulatory approach has been superseded by the amendment. Jackson v. Barnhart, 60 Fed. App'x 255, 256 n.1 (10th Cir.

2003) (unpublished). Consequently, in the instant case, Veach's challenge is to the ALJ's findings concerning her ability to engage in sustained work activity if she abstained from the use of drugs and alcohol.

## 1. *Step 3 moderate CPP, without corresponding RFC restriction*

According to Veach, the ALJ translated a moderate limitation in concentration, persistence, and pace into a residual functional capacity restriction to simple, repetitive work, without any supportive evidence from a medical expert. Veach contends that by doing so the ALJ violated the rule against judging matters entrusted to the experts. The Commissioner challenges this assertion, responding that the record does not contain any expert evidence that Veach is more limited than what the ALJ found, but instead contains corroborative expert opinion evidence supporting a simple task restriction even with the added impairment of substance abuse and other corroborative expert opinion assessing a non-severe mental impairment in the absence of substance abuse. (Response at 3, ECF No. 15.) Because the ALJ's "departure" from the experts is favorable to Veach and does not counter any expert opinion imposing a concentration, persistence, and pace RFC limitation, the Commissioner argues there is no error. (Id. at 4.)

There are two psychiatric review technique forms in the record that predict Veach's degree of mental impairment without the presence of substance abuse, one provided by Lewis Lester, Ph.D., in February 2010 (Exhibit 12F), the other provided by David Margolis, Ph.D., in August 2010 (Exhibit 17F).

According to Dr. Lester, "Without DAA, associated mental limitations are mild & non-severe by SSA standards." (PageID # 784.) DAA is a shorthand reference to Drug Addiction

and Alcoholism.² Dr. Lester's opinion was offered "as of 10/25/08 & continuing." (Id.) Dr. Lester otherwise indicated that there was insufficient evidence of mental impairment between the alleged onset date and October 25, 2008. (Id.) For purposes of the "B" criteria of the psychiatric review technique form, Dr. Lester indicated only mild limitations with regard to maintaining concentration, persistence, and pace. (PageID # 782.)

According to Dr. Margolis, "Without DAA, [Veach's mental condition is] stable and nonsevere." (PageID # 846.) With DAA, Dr. Margolis's B criteria assessment was of moderate limitation in concentration, persistence, and pace. (PageID # 844.)

There is also opinion evidence in the record from treatment provider Karl Sitterly, M.D., who completed a form "Report of Individual with Mental Impairment" in March 2010. Asked to indicate on the report form whether Veach could "[r]emember, comprehend, and carry out (simple) (complex) instructions on an independent basis" Dr. Sitterly wrote, "Simple tasks yes, complex no, forgetful, distracted." (PageID # 806.)

The ALJ observed that the record would support a finding that Veach "continued to experience intermittent episodes of depression and anxiety" even during periods of sobriety. In particular, he noted that during a nine-month period of sobriety Veach reported to Dr. Sitterly that she experienced anxiety attacks and feelings of being overwhelmed and irritable. (PageID # 46.) Dr. Sitterly reported that these symptoms were managed with medication. (Id., citing Ex. 8F.) The ALJ also noted treatment assessments from another doctor of normal mood and affect and normal attention span and concentration, and reasoned that Veach's "level of reported activity and treatment records are consistent with her ability to understand, remember, and carry out simple, repetitive instructions over an 8-hour workday, 5 days a week." (PageID # 46.) The ALJ also gave "significant weight" to the report completed by Dr. Sitterly, noting that he had

---

² See Social Security Administration Program Operation Manual System ("POMS") § DI 90070.041.

opined that Veach could understand, remember, and carry out simple tasks even "in the context of five years of ongoing alcoholism." (PageID # 47, citing Ex. 14F, PageID # 806.)

Veach emphasized at oral argument that the ALJ erred when she relied, in part, on Dr. Sitterly's report to infer that Veach would be able to perform simple, repetitive work in the absence of alcohol abuse. Veach observed that on the first page of the report, Dr. Sitterly stated that Veach "cannot finish simple tasks about the house" and was "easily distracted." (PageID # 805.) However, as the Commissioner argued at oral argument, it was not error for the ALJ to draw this kind of inference from Dr. Sitterly's report because Dr. Sitterly's report addressed Veach's symptoms in the presence of alcoholism, not in its absence. By suggesting that Veach might be able to perform simple tasks even with alcoholism in the picture, Dr. Sitterly's report does lend itself to the ALJ's finding that Veach can do so if she abstains from alcohol.

On this record, Veach has not demonstrated that the evidence of record compels a concentration, persistence, and pace limitation beyond a restriction to simple, repetitive work, if the question is what Veach's residual functional capacity is in the absence of alcoholism. There simply is no medical expert opinion offering a more dire prediction of Veach's residual functional capacity in the absence of substance abuse. Given this particular presentation, the ALJ's "simple" and "repetitive" restriction in the residual functional capacity finding was not a legally erroneous means of accounting for the ALJ's step 3 assessment that Veach has "moderate" difficulties maintaining concentration, persistence, and pace.

## 2. *Misapplication of the Grid*

Varyingly referred to as "the Grid," "the Grids," or "Appendix 2," the Commissioner's Medical-Vocational Guidelines direct a finding of "not disabled" or "disabled" when a claimant meets certain "functional and vocational patterns." Medical-Vocational Guidelines, Appendix 2

7

to 20 C.F.R. Part 404, Subpart P, § 200.00.  Pursuant to the Guidelines: "Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." Id. § 200.00(a).  However, if "any one of the findings of fact does not coincide with the corresponding criterion of a rule, . . . full consideration must be given to all of the relevant facts of the case." Id.

In practice, the Guidelines afford a shortcut to the Commissioner when it comes to addressing some claims at step 5, at which step the Commissioner must demonstrate that there are a significant number of jobs in the national economy that the claimant has the capacity to perform.  Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).  However: "If an individual's specific profile is not listed within this Appendix 2, a conclusion of disabled or not disabled is not directed." Id. § 200.00(d).  Such cases are "decided on the basis of the principles and definitions in the regulations, giving consideration to the rules for specific case situations in this Appendix 2." Id.

Veach argues that the ALJ erred because she did not discuss whether Veach's age as of the date of decision (six months and six days shy of her 55th birthday) warranted treating her as a claimant of advanced age for purposes of the Grid analysis.  Based on the Grid, a person age 55 or higher is considered to be of "advanced age," whereas a person between 50 and 54 is described as "closely approaching advanced age." 20 C.F.R. §§ 404.1563(d), (e), 416.963(d), (e). The ALJ treated Veach as someone "closely approaching advanced age," which was not clearly erroneous because Veach was, in fact, 54 years of age. (PageID # 49, Finding 10.)  With a restriction to light exertion and Veach's vocational background, the applicable Grid Rule would be either Rule 202.10 or Rule 202.11 (Table 2).  Rule 202.10 and Rule 202.11 both point

8

to a "non-disabled" decision, but would require additional fact finding because Veach has additional, non-exertional limitations. However, if Veach was of advanced age, then the applicable Grid Rule would have been either Rule 202.01 or Rule 202.02, both of which point to a "disabled" decision. If the ALJ had applied either of these Grid Rules, Veach would have been deemed disabled automatically.

According to Veach, she was entitled to be treated as being of advanced age because she was roughly 54 and one-half years of age when the ALJ issued her decision. (Statement of Errors at 11.) By regulation, the Commissioner "consider[s] that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work." 20 C.F.R. §§ 404.1563(e), 416.963(e). The regulation also states that the Commissioner "will not apply the age categories mechanically in a borderline situation" and that, "[i]f you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case." Id. §§ 404.1563(b), 416.963(b).

At oral argument, Veach conceded that she did not raise the "borderline age" issue with either the ALJ or the Appeals Council. However, she insisted that she need not raise it because the regulation promises that the issue will be considered and it is the Commissioner's "obligation" to address the issue in all borderline cases. The Commissioner takes the position that the six month mark is at the outside limit of the borderline question. The Commissioner asserts that because the ALJ's decision issued six months and six days before Veach's birthday, the ALJ was free to bypass the issue without discussion. Veach, on the other hand, contends that every claimant in his or her 54th year is entitled to a borderline age discussion whether or not the

9

issue is presented to the ALJ or raised before the Appeals Council.

In Swan v. Barnhart, No. 1:03-cv-00103-JAW, Magistrate Judge Cohen concluded (and the Court subsequently adopted his recommendation) that a claimant who was eight and one-half months from his fiftieth birthday was not entitled to a borderline age assessment and was fairly treated as a "younger individual" rather than as someone "approaching advanced age." 2004 WL 1529270, at *9, 2004 U.S. Dist. Lexis 7639, at *31-32 (Apr. 30, 2004). Magistrate Judge Cohen cited a District of Tennessee decision in which that court "thoroughly canvass[ed] the extant caselaw" and found that a borderline age is around six months before the older age category. He also cited Tenth Circuit and Ninth Circuit authority holding that seven months before the older age does not qualify for borderline consideration. Id. (citing Lambert v. Chater, 96 F.3d 469, 470 (10th Cir. 1996); Russell v. Bowen, 856 F.2d 81, 84 (9th Cir. 1988); Pickard v. Comm'r of Soc. Sec., 224 F. Supp. 2d 1161, 1168-69 (W.D. Tenn. 2002)).[3] More recent circuit authority is similarly unfavorable to Veach. The Sixth Circuit has held that nothing in the regulations "obligates an ALJ to address a claimant's borderline age situation in his opinion or explain his thought process in arriving at a particular age-category determination." Bowie v. Comm'r of Soc. Sec., 539 F.3d 395, 399 (6th Cir. 2008) (relying in part on HALLEX II-5-3-2). The Sixth Circuit has also reasoned: "The fact that age categories are not to be applied mechanically . . . does not mean that a claimant must be moved mechanically to the next age category whenever [her] chronological age is close to that category." Van der Maas v. Comm'r, 198 Fed. App'x 521, 528 (6th Cir. 2006) (quoting Crady v. Sec'y of Health & Human Servs., 835 F.2d 617, 622 (6th Cir. 1987)). The Eighth Circuit has similarly held that there is no requirement to address borderline age and has collected cases reflecting that even six months might not be borderline.

---

[3] In a footnote, Magistrate Judge Cohen collected some cases that treated the borderline period more expansively, but found them unpersuasive for various reasons.

Byes v. Astrue, 687 F.3d 913, 918 (8th Cir. 2012) (citing, inter alia, Roberts v. Barnhart, 139 Fed. App'x 418, 420 (3d Cir. 2005) (unpublished) (holding five to six months is not borderline)).

Based on my own research, it appears that most of the cases finding reversible error based on a failure to discuss the borderline age issue involved claimants who were within six months of their next birthday at the time of the ALJ's decision, though some districts may routinely remand even if the claimant is not yet within six months of his or her next birthday. See, e.g., Pettway v. Astrue, No. 1:10-cv-00127-C, 2010 WL 3842365, at *3, 2010 U.S. Dist. Lexis 101693, at *10-13 (S.D. Ala. Sept. 27, 2010) ("[T]he consensus among federal courts appears to be that six months from the older age category is the extent to which courts will recognize a borderline age situation.") (collecting cases, including some remanding for borderline evaluation for claimants more than six-months from the next age category).

The Ninth Circuit reasoned in Russell that lines must be drawn at some point with regard to the borderline question, "otherwise there would be no efficient way to utilize the Grid system." 856 F.2d at 84. Here, we have a regulatory promise not to apply the age categories mechanically, but also a regulatory statement indicating that borderline age will be considered when the claimant's age is "within a few days to a few months." 20 C.F.R. §§ 404.1563(b), 416.963(b). Even six months is more than a few.

The Commissioner proposes that anything beyond six months does not warrant borderline age consideration, even if the claimant is but a day beyond the six month marker. This assertion does not involve a misapplication of existing law in this circuit or in this district and is within the bounds of sound discretion. Because Veach was not yet within six months of her 55th birthday when the ALJ issued her decision, I recommend that the Court find that the

11

ALJ did not commit reversible error by failing to address the borderline age question.[4] However, I agree with Veach that, had she been within the six month window, remand would be appropriate because the regulation states that the issue of borderline age will be considered, which reflects that it should be considered even in the absence of argument by counsel. Furtado v. Astrue, No. 1:07-cv-00387-LDA, 2008 WL 2950782, at *10-11, 2008 U.S. Dist. Lexis 56499, at *28-29 (D.R.I. July 25, 2008)

Lastly, Veach argues that even if the ALJ did not commit error, it was error for the Appeals Council to overlook the issue because Veach was of advanced age when the Appeals Council "found no reason" to reject the ALJ's decision. In support of this argument, Veach cites Mills v. Apfel, 244 F.3d 1 (1st Cir. 2001), and district court decisions from outside the First Circuit. In Mills, the Court of Appeals considered the issue of how to review an administrative decision when the Appeals Council summarily affirms the ALJ's decision, but considers new evidence in the process and allows that evidence to enter the administrative record. The Court held that a reviewing court should consider the new evidence, even though it was not before the ALJ, and remand for further proceedings if it is apparent that the Appeals Council's summary affirmation "rest[ed] on an explicit mistake of law or other egregious error." Id. at 5. Particularly where the Appeals Council articulates a conclusion that is mistaken, it is appropriate for a reviewing court to call the error. Id. at 6. From that premise, the Court of Appeals evaluated the new evidence admitted by the Appeals Council and concluded that it was not error for the Appeals Council to treat that evidence as consistent with the record before the ALJ. Id. at 6-7.

---

[4] E.g., Cox v. Apfel, No. 98-7039, 1998 WL 864118, at *4, 1998 U.S. App. Lexis 31318, at *10 (10th Cir. Dec. 14, 1998) (unpublished) ("*[B]ecause plaintiff was within six months* of the next age category . . . at the time the ALJ issued his decision, [the ALJ] erred by not addressing whether plaintiff was of borderline age before choosing a rule from the grids.") (emphasis added).

12

According to Veach, <u>Mills</u> supports a legal ruling that the borderline age issue remains alive throughout the administrative process. In other words, Veach says that <u>Mills</u> reflects that the courts in this circuit have the authority to decide that the Appeals Council commits legal error by not applying the Grid based on the claimant's age *as of the date the Appeals Council's review* of an ALJ's decision. In this case, Veach was in the advanced age category when the Appeals Council reviewed the ALJ's decision.

If the ALJ had herself committed error in application of the borderline age issue, I would agree with Veach that the Appeals Council erred in failing to remand for further proceedings, even though Veach's counsel failed to raise the issue. However, I do not believe that it was legal error for the Appeals Council to disregard the issue and summarily affirm the ALJ where Veach reached borderline age and the next age category after the ALJ issued her decision. The Commissioner's regulations are not unreasonable when they prescribe the rule that the period of alleged disability that is under review ends on the date of the ALJ's decision. Even in cases involving new evidence (evidence introduced after the ALJ's hearing) the Commissioner requires that the new evidence presented on appeal to the Appeals Council must concern the period ending with the date of the ALJ's decision. <u>See</u> 20 C.F.R. §§ 404.970(b), 416.1470(b) (stating that the Appeals Council will only consider new evidence on appeal if the evidence "relates to the period on or before the date of the administrative law judge hearing decision"). This Court applies the same rule. <u>See, e.g.</u>, <u>McDonald v. Social Security Administration Comm'r</u>, No. 1:09-cv-00473-JAW, 2010 WL 2680338, at *2-3, 2010 U.S. Dist. Lexis 73686, at *8 (Kravchuk, Mag. J. Rec. Dec. June 30, 2010) (accepted in the absence of objection); <u>Trudell v. Astrue</u>, No. 1:08-cv-00353-JAW, 2009 WL 1885028, at *2, 2009 U.S. Dist. Lexis 56452, at *6 (Rich, Mag. J. Rec. Dec. June 30, 2009) (accepted in the absence of objection). This is fully

13

consistent with the Appeals Council's treatment of the borderline age question in this case and is consistent with the practice prescribed in the SSA's Hearings, Appeals, and Litigation Law Manual. See HALLEX II-5-3-2 (Appeals Council Interpretation, Nov. 2, 1993) (advising adjudicators to consider the claimant's age as of "the alleged onset date, the date last insured (or the prescribed period), or the date of the ALJ's decision," but not mentioning application of the borderline age rule based on age obtained after the ALJ's decision).[5] The appropriate age for purposes of considering the borderline age regulation on appeal from the ALJ's decision is the claimant's age as of the ALJ's decision. Justice v. Astrue, 589 F. Supp. 2d 110 (D. Mass. 2008) (Young, J.) (remanding where the claimant was within four months of the next age category and directing the ALJ to address the borderline age issue based on the claimant's age as of the date of the ALJ's initial decision); Gallagher v. Astrue, No. 1:08-cv-00163-PB, 2009 WL 929923, at *6-7 & n.4, 2009 U.S. Dist. Lexis 29867, at *20-21 & n.4 (D. N.H. Apr. 3, 2009) (Barbadoro, J.) (collecting cases and concluding, for a claimant within five months of the next age category, that

---

[5] Veach cites a case from the Eastern District of Texas in which the court stated, "Some guidance in this regard is found in the case authority which indicates that the relevant age is that which the plaintiff has attained at the time of the court's decision, provided he or she remains insured on that date." Walhood v. Sec'y of Health & Human Servs., 875 F. Supp. 1278, 1284 (E.D. Tex. 1995) (citing Underwood v. Bowen, 828 F.2d 1081 (5th Cir.1987), and Varley v. Secretary of HHS, 820 F.2d 777 (6th Cir.1987)). However, a review of the district court's opinion reflects that it did not actually apply that rule to reach its decision. Moreover, neither did the two appeals court panels cited by the district court. See Underwood, 828 F.2d at 1082 (describing the "critical date" for age determination in a case involving a claimant seeking social security insurance as "the day his . . . insured status expired," which date preceded the application date and therefore also preceded the ALJ's decision date); Varley, 820 F.2d at 780 (rejecting argument that the relevant age was the claimant's age as of the date of the first hearing, when there was an intervening remand order that resulted in a second hearing, and holding that the relevant age is the age as of the decision under review). Veach also cites a Northern District of Illinois decision in which the court had before it a motion to remand filed by the defendant. The plaintiff objected that the proposed remand order should stipulate that disability would be found as of claimant's 50th birthday. The court noted that the claimant was less than a month from his next birthday when the ALJ issued the decision under review. The court also noted parenthetically that the claimant was in the next age category when the Appeals Council issued its decision on review. Hawkins v. Apfel, No. 1:97-cv-06760, 1998 WL 378421, 1998 U.S. Dist. Lexis 10223 (N.D. Ill. July 1, 1998). In light of the claimant's proximity to the next age category, both the ALJ and the Appeals Council clearly erred in Hawkins and there was no need for the court to address the question presented here. Finally, Veach cites Chester v. Heckler, 610 F. Supp. 533 (S.D. Fla. 1985). There, the court found error where the claimant's relevant age was his age upon expiration of his insured status and he was within a month of the next age category as of his date last insured. The court reasoned, as would I, that the Appeals Council erred when it applied the Grid to conclude (mechanically) that the claimant did not become disabled until one month after his date last insured (on his actual birthday) and affirmed the denial of benefits on that basis. Id. at 535.

14

the ALJ "need not explain his determination," but "must provide some indication that he at least considered borderline age," and remanding for the ALJ to consider the claimant's age as of the ALJ's decision, citing Justice).

## CONCLUSION

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court affirm the Commissioner's final decision and enter judgment in favor of the Commissioner.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

December 16, 2013  /s/ Margaret J. Kravchuk
U.S. Magistrate Judge